The next case before us this morning is 25-5057, United States v. Sago, counsel for appellant. If you would make your appearance and proceed, please. Thank you, Your Honor. Tim Kingston, on behalf of the appellant in this case, or the person who has the Certificate of Appeal granted by the court, Kyle Sago. As the court knows, the court granted a Certificate of Appeal on one issue, quote, whether trial counsel was ineffective for conceding guilt against Mr. Sago's wishes, resulting in a failure to subject the prosecution's case to a meaningful adversarial testing process, unquote. Your Honors, this is a difficult case factually and legally. We know that very sadly a person died, and we really don't know why. Meaningful adversarial testing process. What kind of cases is that language ordinarily associated with? It is not associated with Strickland, is it? No, it's not, Your Honor. Okay, and so is Strickland off the table here? We shouldn't be considering it, right? Well, yes and no, Your Honor. I make the argument that the reason why the court should overturn the conviction in this case is on account of what the U.S. Supreme Court has stated in the McCoy case. So if I'm answering your question. No, you're not. I'm saying that, all right, if you're only arguing on McCoy, then, in other words, we don't need to consider the realm. If you win on McCoy, great. If you don't win on McCoy, we do not need to go to the alternative ground of looking at Strickland, which is a different framework that includes an element of prejudice that McCoy does not. Absolutely, Your Honor. We do not need to do that. Correct. In order to address what might be issues that would come up in the case, I also made in the briefs an argument under applying the standard Strickland factors. But, yes, I think the most important issue that this court needs to address in this case is the application of the McCoy decision to what occurred in this particular case. Well, counsel, could I just ask a related question? In the case of United States v. Chronic, the court said the defendant's entitled to a presumption of prejudice if defense counsel failed, I'm quoting, to subject the prosecution's case to meaningful adversarial testing. Now, it seems to me that the COA that was granted in this case tracks the Chronic language. So how does the COA reach a McCoy issue if it's really a Chronic COA? I guess I would fall back on the presentation made in the briefs in this case, that it's such a clear McCoy violation. Well, you haven't asked for an expansion of the COA or a new COA. We're operating under the COA that was granted, and it's a jurisdictional requirement that you have one. So I don't see how we're – I understand that you briefed McCoy to a significant extent, but I'm just not seeing how we reach it unless we sua sponte expand the COA. I mean, is that what you're asking for? No, Your Honor. Maybe you should. Well, as I'm standing here just sort of thinking through the issue, I could do so. I haven't given that a lot of thought, I'll admit, prior to today. I know the government never – has not made that argument in this case. Why don't you consider whether you want to do that now as it relates to McCoy? You argue McCoy. Should we consider McCoy? I would ask the Court to do so, no, yes. Counsel, speaking of McCoy, so that decision, as I understand it, is rooted in the idea that it could be structural error if the defense lawyer essentially overcomes the autonomy of the client by engaging in a defense that the defendant objects to. And what's different, perhaps, in that case, is that Mr. McCoy made his objections to defense strategy known on the record. He tried to fire his lawyer in the middle of the trial. He made express statements that he didn't agree with the concessions of guilt that his lawyer was making on his behalf. When we compare that record to here, do we have anywhere in the record to suggest that Mr. Sago disagreed with Mr. Hyde's presentation to essentially argue to the jury for second-degree murder over first? I would have two responses. First of all, Your Honor, I address this argument made by the government, which I think is what you perhaps are articulating, that look at what happened in McCoy, how vociferous, to use the government's term, McCoy was in objecting to what his attorney intended to do, both to his attorney and to the Court, on numerous instances. And I tried to draw a distinction between that vociferous insistence that was set forth in McCoy to this case. And also I tried to make the point that what Justice Ginsburg in McCoy was doing was trying to draw a distinction between the prior Nixon case, where, as I put it in the brief, the defendant in that case was a cipher. He gave his attorney no direction whatsoever. He didn't respond to his attorney whatsoever. So his attorney was left with nothing but what his own strategy was to do. And I think there's not a vociferous insistent test that McCoy sets forth. Rather, the defendant always retains the absolute control, the absolute autonomy over the strategic approaches. I don't doubt that as a sort of doctrinal principle. What I'm getting at is, if we apply that principle to the record in this case, do we have any evidence where Mr. Sago, again, voiced disagreement with the presentation that Mr. Hyde was making? Yeah, and I was going to get to that, Your Honor. I'm sorry. He did in the affidavits that he submitted to you. I mean during the trial itself. Not during the trial. If you're asking whether on the record in the trial, no. Rather, what he did state in the affidavits in support of his 2255 motion was exactly what you're talking about. He didn't know what his attorney's approach was going to be. What he said was his attorney told him, well, we're going to go for an absolute innocence, a straight acquittal of the government's case. And he did also tell State in his affidavits that he wanted his attorney to present an imperfect self-defense case to the jury. So those statements are clearly in the record and are uncontradicted. They're clearly in the record after the act took place. And, I mean, even if one is not in a posture of saying as a matter of law, you have to be standing up, jumping up and down, claiming don't do this. I mean, why isn't this case just akin to Nixon where the defendant was generally unresponsive? There's nothing. What would have let counsel know here that this strategic decision was overbearing the will of Mr. Sago, particularly since Mr. Sago was prepared to plead guilty, had in fact pled guilty to second-degree murder before that? Your Honor, again, in the affidavits, he expressly states there that the discussions he had with his attorney and he did not know what his attorney's approach was going to be. And I would say, argue to the court, that the attorney has an obligation to discuss with his client what his approach is going to be. And that didn't happen in this case. And then to get – if I may, Your Honor, it looks like I was going to interrupt you and I apologize. His agreement to plead guilty, as I tried to argue in the brief, to second-degree murder, was under the context of an 11C1C plea where he was understanding he received a 25-year sentence, not a life sentence as was given in this case. So it was only – Yes, but that goes towards what his sentence would be. That doesn't mean that he wasn't prepared to factually admit the elements of second-degree murder. And I'm not saying that it binds him, but what I am saying is absent any other indication that his will and his autonomy rejected the notion of a second-degree murder sentence under the right – I mean conviction under the right circumstances, which, you know, your sentencing argument goes to the circumstances. What would have let counsel know that this was not a reasonable strategic decision to make? Because his client told him this is not what I want to do. And we're basing that on what his client told him after the fact, based upon the affidavit that we have, not based upon anything in the record prior to counsel getting up and actually doing it, right? I would agree, but I would respectfully disagree with Your Honor's conclusion, based on that he was willing to plead to second-degree murder. This is a tough case, you know, and any defendant, rational defendant, is going to say, well, you know, I'm going to balance the possibilities of how I'm going to do a trial versus the certainty, the hopes of an 11C1C plea deal. So I don't see that by agreeing to do that, that meant that he was agreeing to his counsel's approach at all. Well, why doesn't his testimony sink his argument here? I mean, on the witness stand, he admitted that he shot the victim. And it was clear that his testimony was geared towards an argument to the jury for second-degree versus first-degree murder. Well, it could cover second-degree murder. I would agree with that, Your Honor. But he wanted his attorney, as stated in his affidavits, to present the imperfect self-defense manslaughter, basically, defense to the case. And the jury was deprived of any opportunity to consider that at all. His attorney basically told the jury, well, I wouldn't really believe this second-degree self-defense, or excuse me, I wouldn't really believe this self-defense approach of my client. It's pretty far-fetched. I know I'm not paraphrasing, but I'm, you know, describing it in certain terms, and only argued meaningfully the prior determination to commit first-degree murder. The prosecution hadn't met the evidentiary requirements with regard to that. Counsel, could I just, would you agree that a McCoy argument is separate and apart from an ineffective assistance counsel argument? It sort of stands on its own. Yes, but it is the basis for why counsels. No, I understand. But it's a different, hasn't the court recognized that it's not the same thing? It's not a Strickland argument. It's a McCoy argument. I would agree with that, Your Honor. All right. And we have precedent in the circuit. Strickland arguments are typically not made on direct appeal, but on 2255. Correct. Yes, Your Honor. Proceedings. But I don't know that we've said that about McCoy. I mean, couldn't he have raised this issue on direct appeal? Yes, he could have. I think that McCoy would have already been decided, so I think that's correct. It wasn't. All right. I don't want to belabor the point. I just wanted to ask you that question. To the extent that, I mean, you've been, you've sort of been peppered with questions to distinguish what happened here from McCoy. If what happened here is really not on all fours with McCoy, would you be arguing that really what you're asking this court to do is extend McCoy to a situation that really hasn't been addressed? Yes and no, Your Honor. Again, in response to a question from Judge Federico, Judge Ginsburg and McCoy wanted to be able to distinguish Nixon. So that's, in my opinion, that's why the court, McCoy and Judge Ginsburg, went through a kind of lengthy discussion of what McCoy did. It also gets back to the question of, you know, the judge in this case denied the 2255 motion without any kind of hearing. And I think this might go to Judge Federico's concern, which is in the absence of a hearing, there was no fleshing out of the questions that were set forth and the issues and the facts that were set forth in the affidavits that were presented here. And so I think the lack of a hearing is also directly related to how this court needs to look at this case. But a hearing is not encompassed within your COA. It was not encompassed within the statute that was granted by this court. That's correct on its face, but I believe it's so directly related to it. So, Your Honors, if I could find a better way to say it, I apologize for not being well prepared to address the issue of expanding the COA, but I would ask the court to be able to do that. If the court would need anything further from me on behalf of my client, I would certainly submit whatever is appropriate. And with that, I don't have any further time. Thank you, Your Honors. May it please the court, Stephen Bryden on behalf of the United States. This court should affirm the district court's denial of Mr. Sago's 2255 petition because Mr. Hyde did not fail to subject the government's case to meaningful adversarial testing. There was no structural error. Well, isn't that the chronic standard? It is, Your Honor. And did Mr. Sago make a chronic argument in his brief? It's more of a McCoy argument, isn't it? I agree that the argument is primarily a McCoy, although Mr. Sago does make reference to the chronic standard. It does make an argument about whether counsel completely abdicated his duty to Mr. Sago. However, in our response brief, we discussed Cook's, which is one of the leading cases on this issue, and how the type of failure that's contemplated by chronic has to be a complete and total failure to act as an advocate. And in this case, you know, Mr. Hyde, from the beginning, never conceded first-degree murder. He argued against premeditation. He pointed out the fact that the government could not establish a motive for this killing. After Mr. Sago testified, Mr. Hyde gave the jury a possible explanation in his closing argument about why there wasn't actually a weapon found near the deceased, which could possibly support his testimony in that hearing. And he cross-examined 10 of the 13 witnesses. And this court, in looking at cases like that, has never found that that rises to the level of a chronic failure that would result in a structural error. Counsel, can I conclude from your response brief that the government read the COA grant here to encompass both McCoy and chronic? I did, Your Honor, for, I think, two different reasons. One, the argument that Mr. Sago made when he wrote his pro se petition kind of overlaps the two issues in it. And so when the court certified that question, I wanted to make sure that we responded to what was laid out in there. Additionally, I don't think it's clear in Nixon and McCoy, but they both do reference chronic in their determination. I don't think either decision says, because of this failure, this amounts to a chronic error. But it is a case that they discuss in that. And so I thought it was important, especially since it was also argued in the opening brief, that the government address the McCoy issue. And then, Counsel, you heard our discussion a moment ago regarding the differences in the record between McCoy and this case. Are you aware of any Court of Appeals case post-McCoy that has found a McCoy error, a structural error, when there is the absence of a record of the defendant objecting to the strategy of the counsel on the record during the trial? I'm not aware of one, Your Honor. If there is one, I didn't find it during my research. But I think that's important. It goes to why McCoy takes the time to distinguish Nixon, and then the difference in the questions presented in both. So the question in Nixon that Mr. Nixon was trying to get before the Court was, is it always structural error for a counsel to concede without the express consent of the defendant? That was the question the Court was answering in Nixon. And that's the one that they answered in the negative. And that was based on the particularities of the case. In McCoy, they take a point to make that, I'm sorry, they say they're talking about the question that is a split from courts of last decision. And the way they frame the question in McCoy is whether it's unconstitutional to allow defense counsel to concede guilt over defendant's intransigent and unambiguous objections. And so the rule can't be, if you read those two cases, that a defense counsel has to have affirmative approval from his client in order to proceed with a concession defense. And because they make such a point both in the question presented and then in the examination of the evidence in McCoy of making clear that Mr. McCoy basically couldn't have done anything more to let the Court know and to let the counsel know that he disagreed. Additionally, even beyond what was happening in the Court, Mr. McCoy affirmatively refused to plead guilty, admit any kind of acceptance for the actions that were charged against him in the case. And that's important because otherwise this Court is left with little to go on. In this case, Mr. Sago made no mention at all at any point during the process in any record that supports the argument that he's making now in his 2255 petition. While I use the language of, I think, vociferousness, which is what McCoy uses, the government doesn't argue that it has to be vociferous, but it has to be something. It can't be nothing, because otherwise the Court has no opportunity to address it. Counsel, if we accept that Mr. Sago directed counsel to present an imperfect self-defense, why doesn't that show objection to counsel's concession on the second-degree murder point? First, there's a lot of reasons not to accept that at face value. I know, but let's say that that actually did happen. Why doesn't that constitute an objection to conceding second-degree murder? So in both Nixon and McCoy, part of the analysis is that there are lots of reasons why somebody wouldn't want to plead guilty at all, and those are based on things like not wanting to admit that she commits a serious crime, familiar stigma, and things like that. Him possibly having a disagreement with defense counsel about what manner of mitigation strategy to pursue doesn't bring those same issues to the forefront in the same way it does when a client is saying, I am innocent and will accept no guilt. And so it's a different type of thing that wouldn't necessarily result in this automatic prejudice. And this Court has case law already about if there are multiple strategies to take, especially in presenting a closing argument, the attorney does have some leeway to choose between the ones that he thinks are going to be the most effective in the moment. Does McCoy encompass a rule which requires, well, that speaks to the question of structural error lying in concessions of guilt that relate to all of the elements of guilt? In other words, could you have a McCoy violation if counsel only, and I think in Nixon that was the case, only tried to knock out the intent level? I think it could depend on the circumstances of the case, Your Honor. But, well, I mean, ultimately— I mean, phrased another way. Sure. I mean, if you had a—you have a charge here. Let's say you have a charge here, first-degree murder. Okay. And counsel says that we'll concede everything but premeditation, which in effect is frankly— but let's take away the second-degree murder. We'll concede everything but premeditation. Do you have a McCoy problem here? You could if the defendant made known during the course of the trial that he objected to that concession. Okay, yes. But let's say his objection is don't—he tells—he vociferously, whatever word you want to use, says, don't—do not concede my guilt, word guilt. And counsel goes up and says, we're conceding three of the four elements. We're not conceding premeditation. Have you violated or overridden the statement don't concede my guilt? You would under McCoy because it's unclear from the majority opinion, but if you look at the dissenting opinion, Justice Alito makes a point that counsel did not concede first-degree murder. He made an accusation that was kind of elided over by the majority in making their analysis. So there's nothing from the majority opinion that would tell you that. But the dissent does seem to signal that. Well, doesn't—this Court in Holloway restated some of the language from McCoy that discussed that it's not a strategic dispute between counsel and defendant if counsel is going to concede an element. So it talks about an element. So I think the premise that we're discussing here, as I understand your position, is that you would say yes. If there was evidence in the record here that Mr. Hyde was conceding elements, maybe not. But that could potentially give rise to McCoy error. Certainly, you're not saying that is the record here, but the premise. Correct. In a situation where the defendant makes known during the course of the trial or pre-trial also that they object to that admission of guilt. If the court has no further questions— Yeah, I've got to follow up because I'm not really clear in your answer, Judge Federico. What I was trying to get at and understand is whether McCoy requires us to be talking about only a situation where one actually concedes the guilt of the full crime. In other words, a distinction can exist in which I say, don't concede that I committed this crime. And then counsel gets up and says, well, jury, don't worry about elements one through three. We're going to fight to the death on element four of the crime. In that situation, has counsel overridden my will in saying don't concede my guilt of the crime? Does it matter whether you're conceding everything? And I mean, I could acknowledge a situation where the defendant says, don't concede premeditation, and then you get up and concede that. But that's not what my hypothetical is. My hypothetical is, don't concede my guilt, and then you get up and you don't concede every element. You just concede three of the four. Do you still have a problem is what I'm getting at. No, Your Honor, and I apologize for misunderstanding your question earlier. I think I grasp it a little bit better now. There are lots of occasions where defense counsel in the course of a trial will focus their defense on one particular element, and that still complies with a direction from a client not to admit guilt. I think it's something that they pointed out in Nixon, if I'm not mistaken, where just because there's a concession, but if the defense counsel is still holding the government to their burden, still making the government go through the paces of their case, that is not necessarily a full confession. And here, there are many times where an element of a crime is not meaningfully in dispute, and it wouldn't advance your duty to your client at all to argue that issue. And there would be no problem with an attorney saying that as part of a closing, with the direction that the client still seeks innocence. Thank you. If there are no further questions, I cede the rest of my time and ask the Court to affirm. The case is submitted. Thank you, counsel.